IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01375-MSK-CBS

JIM ELSON, and
LEONARD DELGADO,

       Plaintiffs,

v.

COLORADO MENTAL HEALTH INSTITUTE AT PUEBLO,

       Defendant.

---

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on Defendant Colorado Mental Health Institute

at Pueblo's ("CMHIP") Motion for Summary Judgment[1] **(#48)**, to which the Plaintiffs responded

**(#50)**, and CMHIP replied **(#51)**.  Having considered the same, the Court **FINDS** and

**CONCLUDES** the following.

### I.   Jurisdiction

In part, subject matter jurisdiction is contested.  Therefore, the Court exercises its

inherent authority to determine its own jurisdiction.  *See United States v. Ruiz*, 536 U.S. 622, 628

(2002).  Where such jurisdiction exists, the Court exercises subject matter jurisdiction pursuant

to 28 U.S.C. § 1331.

### II.   Issue Presented

---

[1]   The Motion **(#48)** is titled both a motion to dismiss and a motion for summary
judgment.  At the September 21, 2010 Rule 16 Conference **(#54)**, the Court confirmed that the
motion would be considered under Rule 56.

In this action, the Plaintiffs were medical providers employed by CMHIP.  They contend that CMHIP discriminated against them on the basis of their sex – that they are male.  In their Complaint **(#1)** they asserted four claims: 1) that CMHIP discriminated against them in violation of the Title VII of the Civil Rights Act of 1964; 2) that the CMHIP retaliated against Mr. Elson in violation of Title VII by imposing unwarranted discipline and investigations following his complaint to the Equal Employment Opportunity Commission ("EEOC"); 3) that CMHIP created and sustained a sexually-hostile work environment and constructively terminated them on the basis of their sex in violation of 42 U.S.C. 1983; and 4) that CMHIP deprived them of due process in violation of the 14th Amendment to the United States Constitution.  The Plaintiffs voluntarily withdrew Claims 3 and 4 at the September 21, 2010 Rule 16 Conference **(#54)**, leaving only Claims 1 and 2.

In its Motion for Summary Judgment, CMHIP seeks judgment in its favor on the remaining claims.  As to Claim One, CMHIP makes three arguments: (i) the Plaintiffs' claims are barred by the exclusive remedy provisions of the Colorado Workers' Compensation Act; (ii) the Plaintiffs waived their right to bring this suit in settlement of their Workers' Compensation claims; and (iii) the Plaintiffs cannot make out a *prima facie* case of sex discrimination.

As to Claim Two, Mr. Elson's claim of retaliation, CMHIP argues that: (i) Mr. Elson did not exhaust his administrative remedies because he failed to assert the claim in the charge he filed with the EEOC;  and (ii)  he cannot demonstrate a *prima facie* claim of retaliation.

### III.   Material Facts

Viewing the evidence submitted in the light most favorable to the Plaintiffs, the material facts are as follows.

CMHIP is a state psychiatric hospital that serves adult males who are referred by the criminal justice system—its patients are those that have been found incompetent to proceed to trial or those found not guilty by reason of insanity.  The hospital includes four "wards" or divisions, that are designated F1, F2, F3, and F4.  At all times relevant to this case, Mr. Elson was a Registered Nurse II and the supervisor in ward F2.  Mr. Delgado was a Psychiatric Technician in ward F2, working under the supervision of Mr. Elson.

At CMHIP, if a patient is violent or sufficiently disruptive, a staff member may determine  that it is necessary to impose "seclusion" or "restraint"[2] (hereafter "S/R") procedures. In such instances, a staff member sounds a duress alarm.  CMHIP policy requires that "[s]ufficient staff shall be present to place the patient in [S/R] in the safest manner possible." The policy states that "[a]ny competent and trained member of the nursing department may initiate [an S/R] by sounding a duress alarm, and any available non-nursing member of the clinical staff may respond to an emergency to assist nursing staff."  Although the policy language uses the words "may respond," the parties appear to agree that CMHIP's actual policy anticipates that <u>all</u> available staff must respond to a duress alarm and participate in the S/R.

According to the Plaintiffs, when duress alarms were sounded, some, but not all[3], of the female nurses or technicians refused to respond to the call.  These individuals "fled" the scene

---

[2]  Seclusion is defined by Hospital Policy 6.45 as "[t]he confinement of a patient alone in a room or restricted a specific area from which the patient is physically prevented from leaving for any period of time."  Restraint is defined as "[t]he use of a physical or mechanical device to restrain movement of the whole or a portion of a patient's body as a means of controlling a patient's physical activities to protect the patient and/or others from injury."

[3]  The Plaintiffs appear to focus on a group of four specific female staffers that would not participate.

and hid behind locked doors in some other area of the ward.  On at least one occasion, two

female nurses "jumped over"  Mr. Elson and Mr. Delgado while they were administering S/R to

a patient.  As a result, the Plaintiffs were often left to administer the S/R without being assisted

by other staff members.

The Plaintiffs lodged several complaints to their supervisors about the female employees

who refused to participate in S/R calls, but no disciplinary action was taken against the female

employees, no new policies were implemented, no retraining occurred, no clarification of

existing policies was provided.  Apparently,  no other action was taken in response to the

complaints.[4]

On several occasions, the Plaintiffs were physically injured while administering an S/R.

Mr. Elson was injured on five separate occasions between December 2002 and February 2006.

He has undergone multiple surgeries as a result of these injuries and is unable to work.  He is

currently receiving disability benefits through the Public Employees Retirement Association.

Mr. Delgado was injured on December 14, 2006.  His injuries required multiple surgeries

including two on his left knee, his neck, five on his lower back, and one on his right shoulder.

He will require another back surgery.  He is no longer able to work and is currently receiving

_____

[4]The Plaintiffs' own evidence calls this assertion in their affidavits into some doubt.
Exhibit 4 to the Plaintiffs' response includes a typewritten statement by Mr. Elson, dated January
15, 2006.  It noted that "many [female staff] including Barb [Thomas] hide when the males are
forced to respond to physical crisis. . . . Mark Cordova[, a supervisor,] has counseled Barb
regarding her staying in the nurses station when her male peers responded to a crisis."  Thus, the
record seems to reflect that some female employees have at least been "counseled" regarding
their refusal to comply with the policy, although apparently that counseling was ineffective in
ensuring compliance with the policy and more exacting discipline did not follow.  In addition,
CMHIP has proffered evidence that Mr. Elson had stated in 2006 that "Barbara Thomas had a
problem [with S/R] . . .  she was absolutely afraid," but that "she's doing her job now."

disability benefits through Social Security.

Both Plaintiffs sought, and received, compensation for their injuries under the Colorado Workers' Compensation Act.  Pursuant to their Workers' Compensation claims, each Plaintiff executed a "Settlement Agreement" with CMHIP's insurance carrier, Pinnacol Assurance ("Pinnacol") to conclusively settle all their claims under the Act.  As part of each Settlement Agreement, each party executed a waiver.  Mr. Elson's waiver, executed August 6, 2007, states:

> Claimant FOREVER waives, releases and relinquishes any and all rights he may have against Respondents . . . for any and all claims he may ahve arising out of or in relation to this Worker's Compensation matter for outrageous conduct, bad faith, negligence, intentional acts, breach of duty, civil rights violations, or any claim in relation to the handling or processing of these claims by Respondents . . . This settlement pertains only to matters related to the Worker's Compensation claim(s) settled herein and is not intended to settle any other non-Workers' Compensation matters claimant may potentially have against the employer.

Mr. Delgado's waiver, executed March 10, 2009, reads:

> The parties hereby waive, release, and relinquish any and all potential causes of action, known or unknown, against each other arising out of or in relation to the Workers' Compensation claim(s).  These claims include, but are not limited to, outrageous conduct, bad faith, negligence, intentional acts, civil rights violations, or breach of any duty by any party, and include claims for damages including attorney fees and costs. . .  This settlement pertains only to matters related to the Workers' Compensation claim(s) being settled herein and is not intended to settle any non-Workers' Compensation matters between claimant and the employer.

## IV.   Analysis

CMHIP moves for summary judgment as to both of the claims asserted by the Plaintiffs: (1) sex discrimination by both Plaintiffs and (2) retaliation by Mr. Elson.  The Court turns first to the sex discrimination claim.

A.    **Claim 1: Sex Discrimination**

1.    **Exclusive Remedy was in Colorado Workers' Compensation Act**

CMHIP argues that Plaintiffs are barred[5] from bringing their claims because their exclusive remedy for the injuries suffered on the job was pursuant to the Colorado Workers' Compensation Act ("CWCA"), a remedy which they have invoked.  The Plaintiffs respond that the CWCA does not provide the exclusive remedy for pain and suffering, loss of enjoyment of life or emotional distress and, therefore, their claims to recover for these injuries are not barred.

The CWCA provides that it is the exclusive remedy for "personal injuries" suffered by a worker if three conditions are met: (i) at the time of the injury, both the employee and the employer are subject to the provisions of the CWCA and the employer has complied with all the insurance provisions of the Act; (ii) at the time of the injury, the employee was performing a service arising out of and in the course of his employment; and (iii) the injury was proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment and is not intentionally self-inflicted.  *See* Colo. Rev. Stat. § 8-41-301(1). Preclusion of a claim based on the CWCA is an affirmative defense and, therefore, the CMHIP bears the burden of demonstrating that the claim falls within the scope of the CWCA.  *See Radil*, 384 F.3d at 1225.

There is no dispute that the Plaintiffs' <u>physical</u> injuries (and the damages associated with them)  fall within the scope of the CWCA.  Thus, the CWCA is their exclusive remedy for

---

[5] CMHIP couches this as a jurisdictional issue.  However, the Tenth Circuit has determined that Worker's Compensation exclusivity in an affirmative defense, not a matter implicating the Court's subject matter jurisdiction.  *Radil v. Sanborn Western Camps, Inc.*, 382 F.3d 1220, 1226 (10th Cir. 2004).

damages arising from all physical injuries.  This includes emotional distress, disfigurement, and loss of enjoyment of life that result from the physical injuries.  *See DerKevorkian v. Lionbridge Techs., Inc.*, 316 Fed. Appx. 727, 735 (10th Cir. Dec. 3, 2008) (unpublished).  In *DerKevorkian*, the Tenth Circuit held that the plaintiff's "injury in the form of depression and anxiety, and its associated physical manifestations, is a mental injury which could be covered by the [C]WCA." *See also Smith v. Colorado Interstate Gas Co.*, 794 F. Supp. 1035, 1042–43 (D. Colo. 1992); *Popovich v. Irlando*, 811 P.2d 379 (Colo. 1991).

However, state Worker's Compensation remedies do not displace federal anti-discrimination laws. *Roberts v. Roadway Express*, 149 F.3d 1098, 1105 (10th Cir. 1998), *citing Karcher v. Emerson Elec. Co.*, 94 F.3d 502, 509 (8th Cir. 1996) *and Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1190 (2d Cir. 1987).  The protections offered by Worker's Compensation – ensuring medical treatment and income protection resulting from on-the-job injuries – differ in scope from the protections offered by anti-discrimination laws.

Anti-discrimination laws ensure that employment decisions are made free of invidious discrimination.  The Plaintiffs' discrimination claims turn on whether CMHIP treats male and female employees differently. The fact that such differential treatment may have led to the Plaintiffs sustaining physical injuries is, in many ways, irrelevant to claims of discrimination.  If the Plaintiffs succeeded at trial, they would be entitled to recover damages they sustained as a result of being subjected to differential treatment.

Worker's Compensation exclusivity prevents the Plaintiffs them from recovering damages under Title VII for the physical injuries they sustained, as well as any emotional distress or other non-economic damages they suffered as a result of being physically injured;

indeed, they have already been fully compensated for their physical injuries as a result of their Worker's Compensation claims. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can and should preclude double recovery by an individual"). But Worker's Compensation does not displace the Plaintiffs' right to recover economic or non-economic damages that they have suffered as a result of prohibited discrimination to the extent that some other exclusive remedy does not cover those damages. Accordingly, the Court finds that the Worker's Compensation statute does not bar the Plaintiffs' claims for sex discrimination or retaliation.

### 2.    Waiver of Rights to Pursue Civil Rights Clams

CMHIP next argues that the Plaintiffs waived their right to sue for discrimination in their settlement agreements for their claims under the CWCA. As an affirmative defense, CMHIP bears the burden of demonstrating waiver. *See* Fed. R. Civ. P. 8(c); *Madrid v. Phelps Dodge Corp.*, 211 Fed.Appx. 676, 681 (10th Cir. Nov. 29, 2006) (unpublished); *see Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). It is undisputed that the Plaintiffs executed the Settlement Agreements and included waivers and the specific language as to each. What is disputed is the meaning of the waiver contained therein.

The plain language of both waivers indicates that they operate to release "only [those] matters related to the Worker's Compensation claim(s) settled herein" and that they were "not intended to settle any other non-Workers' Compensation matters claimant may potentially have." As a result, the waivers operate to extinguish any right the Plaintiffs have to assert any claim for damages arising out of the <u>physical</u> injuries that gave rise to the Worker's Compensation claim. But, as noted above, claims for employment discrimination are not claims for physical injuries –

physical injury is not a required element of a discrimination suit.  Certainly, prohibited

discrimination <u>could</u> have the effect of causing an employee to suffer a physical injury, but the

employee's decision to seek redress for the physical injury via Worker's Compensation would

bar the employee's ability to recover damages for that same physical injury in a discrimination

suit.  But the Court understands the Plaintiffs here to assert the fact of their physical injuries only

to demonstrate the severe consequences that CMHIP's discriminatory application of its policies

can have, not to recover again for the cost of surgeries or the loss of enjoyment of life that results

from their physical injuries.  Thus, while CMHIP is correct that the Plaintiffs' waivers (and the

exclusive remedy provisions of the Worker's Compensation statute) operate to prevent them

from recovering additional damages for physical injuries, the waivers do not limit the Plaintiffs'

right to assert claims for illegal discrimination based on CMHIP's failure to enforce its policies

in a non-discriminatory manner.

### 3.      Summary Judgment

CMHIP argues that summary judgment in its favor is warranted because the Plaintiffs

cannot establish every element of their *prima facie* case of reverse sex discrimination.

### a.      Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and

a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs

what facts are material and what issues must be determined.  It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party

with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986);

*Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of

and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

When the movant has the burden of proof on a claim or defense, the movant must

establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R.

Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a

genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine

dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material

fact, no trial is required. The court then applies the law to the undisputed facts and enters

judgment.

When the moving party does not have the burden of proof at trial, it must point to an

absence of sufficient evidence to establish the claim or defense that the non-movant is obligated

to prove. If the respondent comes forward with sufficient competent evidence to establish a

*prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient

competent evidence to establish its claim or defense, the claim or defense must be dismissed as a

matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### b.      Disparate Treatment Analysis

Generally, to establish a *prima facie* disparate treatment claim under Title VII, an

employee must show (i) he or she belongs to a protected class; (ii) he or she suffered an "adverse

employment action; and (iii) the challenged action took place under "circumstances giving rise

to an inference of discrimination."[6]  *EEOC. v. PVNF, Inc.*, 487 F.3d 790, 800 (10th Cir. 2007).

Establishing a *prima facie* case "in effect creates a presumption that the employer unlawfully

discriminated against the employee."  *St. Mary's Honor Ctr.*, 509 U.S. at 506; *see also Jaramillo*

*v. Colo. Jud. Dep't*, 427 F.3d 1303, 1306–07 (10th Cir. 2005).  If the plaintiff establishes a *prima*

*facie* case, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory

reason" for its action.  *Id.*  If the defendant presents such a reason, burden then shifts back to the

plaintiff to meet the "ultimate burden" of showing, by a preponderance of the evidence, that

these proffered reasons are a merely a pretext for unlawful discrimination.  *Id.; Munoz v. St.*

---

[6]CMHIP contends that this case presents claims of "reverse discrimination," which are subject to a heightened standard of proof.  *See Notari v. Denver Water Dep't*, 971 F.2d 585, 588–89 (10th Cir. 1992).  In cases where a the employee does not purport to belong to a "historically or socially disfavored group," he or she must come forward with additional facts at the *prima facie* case stage to show "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id.*

The Court has some doubt both that *Notari*'s reasoning remains sound nearly two decades after its issuance, *see e.g. Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998) ("Title VII . . . protects men as well as women . . . Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group" and noting, in a case involving a male plaintiff claimed to have been passed over for a promotion in favor of a female, "we did not consider it significant that the supervisor who made that decision was also a man"), or that it is uniformly applicable in every case in which a white employee asserts race discrimination or a male employee claims sex discrimination.  Nevertheless, it is unnecessary to reach this issue, as the Plaintiffs' failure to come forward with adequate evidence of an adverse employment action ameliorates the obligation of the Court to address the remaining elements of the *prima facie* case.

*Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

CMHIP contends that the Plaintiffs cannot establish the third element of their claim - that they suffered an adverse employment action. Whether a challenged action constitutes an adverse employment action is determined on a "case-by-case approach" and requires examination into the "unique factors relevant to the situation at hand." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). Title VII prohibits discrimination against any employee "with respect to ... terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). If an employer's action operates as a "substantial" or "material" change for the worse in the terms and conditions of employment, an adverse action may be found. *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004). Most often, conduct amounting to an adverse employment action is considered to be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998); *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004).

The Plaintiffs do not contend that they experienced a typical adverse action – *e.g.* termination, discipline, demotion[7]; rather, they contend that CMHIP's failed to rigorously and

---

[7]The Plaintiffs attempt to tie the issue to a typical adverse employment action – failure to hire – in the sense that CMHIP allegedly failed to ensure that its female hires were capable of and willing to participate in S/R procedures. This Court finds that the Plaintiffs lack any standing to complain about CMHIP hiring decisions that did not directly involve them.

The Plaintiffs also complain that the supervisor in the F1 ward would often request "coverage" from employees in the F2 ward, specifically requesting male employees. (It is not clear to the Court whether the request for males was made as a generic request for "males" or by a demand for certain individuals, all of whom happened to be males.) Assuming this to be true, the Plaintiffs have not indicated that they were forced to provide such "coverage," nor, if they were, that "covering" the F1 ward involved significantly different duties than they would have had to perform in the F2 ward. Thus, even assuming the Plaintiffs were temporarily assigned to

uniformly enforce its policies requiring all employees to participate in S/R procedures, thereby making it more dangerous for men (and the women who complied with the policy) to carry out the S/R procedures.

Courts are extremely reluctant, under the guise of enforcing civil rights law, to usurp the rights of employers to manage their businesses in good faith as they see fit.  *See Johnson v. Weld County*, 594 F.3d 1202, 1211 (10th Cir. 2010).  Put differently, the Court does not act as a "super-personnel department" whose job it is to undo employment decisions that, while not discriminatory, are not particularly wise, practical, or are unfair in some abstract sense.  *Id.*  Reduced to its essence, the Plaintiffs' complaint is simply that CMHIP has made such an unwise or impractical business decision: it has chosen not to strictly enforce its policy that all staff members must respond to a call for S/R assistance.

Title VII does not require employers to enforce their policies as they are written, so long as whatever enforcement of the policy that actually does occur occurs without discrimination.  Here, the Plaintiffs contend that no women were disciplined for violating the S/R policy, but they do not contend that any men were disciplined, either.  Thus, CMHIP appears to apply the S/R policy equally to male and female employees, insofar as no one was disciplined for failing to adhere to the policy.

In essence, the Plaintiffs lodge a complaint common to many workplaces: some employees scrupulously attempt to follow the employer's policies and others don't; when there is no disciplinary action taken by the employer against employees  who do not follow the

---

the F1 ward for "coverage," such reassignment does not amount to an adverse employment action.

policies, those who do are upset.  Many criticisms can be leveled at such a practice, but the Court cannot say that an employer who fails to correct the shirking employee has effectively imposed an adverse employment action upon the diligent employee; at best, the employer is guilty of inaction, rather than adverse action.

If the Plaintiffs had stopped responding to S/R calls (as they contend certain female employees did), and they were disciplined as a result, the discipline would have been an adverse employment action.  But the failure to discipline co-worker who did not respond, does not constitute an adverse employment action against another the Plaintiffs.  To hold otherwise would extend the reach of Title VII far beyond the boundaries of correcting discriminatory actions taken against employees and convert it to a tool that could be used by some employees to force their employers to discipline others.

The Plaintiffs contend that CMHIP's failure to correct the recalcitrant female employees' behavior is an adverse employment action because it allegedly exposed the employees responding to the S/R calls – including the Plaintiffs – to an increased risk of being injured by a violent patient.  CMHIP concedes that "arguably, failing to enforce [the policy] could be an adverse employment action if the failure to enforce the policy created unsafe working conditions."  *Citing Johnson v. City and County of Denver*, D.C. Colo. Case No. 06-cv-21330-MSK-MJW, 2008 WL 3914000 (D. Colo. Aug. 22, 2008) (slip op.).  The Court has some doubt that *Johnson* offers meaningful guidance on this question.

In *Johnson*, the plaintiff was a female deputy assigned to guard inmates at the Denver County Jail.  Among other things, she contended that she was subjected to sex discrimination because her supervisor "did not back up her decisions" and belittled her in front of inmates.  She

contended that this conduct "put her in danger," presumably because inmates viewing such conduct by the supervisor were tacitly induced to share the supervisor's disrespect toward plaintiff.  In addressing her disparate treatment claim, this Court struggled with the notion that the supervisor's conduct amounted to an adverse employment action.  It found that "no evidence was presented of any unfavorable performance evaluation . . . which affected Ms. Johnson's pay, benefits, or other work conditions."  The Court stated that "[a]rguably, [the supervisor's] alleged conduct undermining her authority in front of the other inmates could have been an adverse employment action if it created unsafe work conditions," in the sense that "his conduct might have significantly altered the conditions of her employment."  But assuming a theoretical basis for the claim, the Court ultimately concluded that the plaintiff had not come forward with evidence to support the conclusion that her safety was compromised by the supervisor's conduct.

*Johnson* offers little guidance here.  The Court's statement that an adverse employment action might "arguably" arise if an employer's action exposed an employee to unsafe work conditions is nothing more than an acknowledgment that such an argument might colorably be made.  The term "arguably" is merely a rhetorical device to assume the sufficiency of a doubtful proposition, so as to allow the Court to move on to another proposition that suffices to dispose of the argument.  It is not a finding that, if the supporting evidence had been presented, an adverse employment action would be proven; at best, the Court would have then had to squarely address the question of whether "exposure to unsafe conditions" could indeed be an adverse action – something it ultimately did not have to do.

Moreover, the facts in *Johnson* differ from those presented here.  In *Johnson*,  the supervisor's discriminatory actions <u>were directed at</u> the plaintiff, and those actions allegedly

exposed her to the alleged risk of harm.  Here, no evidence suggests that CMHIP or the

Plaintiffs' supervisor acted in a discriminatory way toward the Plaintiffs; there is no evidence of

any action, only inaction, by CMHIP.  Such inaction did not create a danger - that danger existed

due to the nature of the patients' behavior during the S/R process.  At most, CMHIP's inaction

failed to mitigate or reduce the danger to all employees who responded to the duress call.

If the Court applied the reasoning used in *Johnson*, it would also reach the same result .

As in *Johnson*, these Plaintiffs assume that they are placed at a greater risk of harm when certain

female co-workers refuse to participate in S/R procedures.  Mr. Elson states that "the vast

majority of the females do their jobs . . . almost all of them participate."  Thus, the question

becomes whether the Plaintiffs can show that the participation of the remaining women staff

members  would reduce the risk of injury during an S/R procedure.

No evidence on this issue has been proffered.  There is no evidence of a particular S/R

event, nor evidence that the outcome of any S/R event would have changed if all staff had

responded.  Thus, as in *Johnson*, the Plaintiffs failed to come forward with evidence establishing

that the employer's action (or, here, inaction) increased the risk of harm to them.

Accordingly, the Court finds that the Plaintiffs have failed to demonstrate that they were

subjected to an adverse employment action by CMHIP failing to take action on their complaints.

CMHIP is therefore entitled to summary judgment on their sex discrimination claims.

**B.      Claim 2: Retaliation**

In Claim 2, Mr. Elson asserts that he complained of the discriminatory treatment of male

nurses at the hospital, in retaliation, he was denied a promotion and investigated for alleged

misconduct during the course of his employment.  CMHIP argues that the Court lacks subject

matter jurisdiction over this claim because Mr. Elson did not include such an allegation in his EEOC charge and that, in any case, he cannot demonstrate a *prima facie* case as to retaliation.

A plaintiff may not bring a claim under Title VII unless they have first exhausted their administrative remedies by filing a specific charge of discrimination with the EEOC. *See Simms v. Oklahoma ex. rel., Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); *Jones v. Runyon*, 91 F.3d 1398, 1400 n. 1 (10th Cir. 1996). Under this rule, a plaintiff is generally barred from bringing a Title VII action based upon claims that were not part of the employee's EEOC charge.[8] *See Simms*, 165 F.3d at 1326. A plaintiff is required to exhaust his or her administrative remedies for "each discrete incident of [discriminatory] treatment" because each incident constitutes a separate "unlawful employment practice." *See Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003), citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Exhaustion of remedies prior to filing a suit provide two benefits: (i) it provides notice of the alleged violation to the employer charged with engaging in unlawful behavior; and (ii) it gives the EEOC an opportunity to conciliate the claim. *See id.*

On his EEOC charge,[9] Mr. Elson checked the boxes for discrimination based on "sex," "disability," and "retaliation." In the narrative describing his claims, Mr. Elson stated that "I believe that I have been discriminated against . . . in retaliation for opposing a discriminatory

---

[8] Although timely filing an EEOC charge is not a jurisdictional issue, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), the failure to allege a particular act of discrimination in a charge operates to deprive the courts of jurisdiction to hear claims based on alleged discriminatory acts not included in the charge. *See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir.2005).

[9] Mr. Elson's charge was actually filed with the Colorado Civil Rights Division, but pursuant to a work-sharing arrangement, such charges are deemed concurrently filed with the EEOC. For purposes of efficiency, the Court will refer to it as an EEOC charge.

practice." He states that "I objected that only the male nurses were [restraining patients]," and states that "I believe that I will be terminated as a result of my complaints of discrimination and because I am now on medical leave."

The only "act" of retaliation alleged on Mr. Elson's EEOC charge was his speculation that, at some point in the future, "I will be terminated." Mr. Elson's charge makes no reference to his being denied a promotion because of his protected activity, nor does it mention him being "investigated for alleged misconduct" in response to any protected conduct. As a result, Mr. Elson's EEOC charge failed to adequately exhaust any contention that he had been retaliated against by means of a denied promotion or investigation for misconduct. Because Mr. Elson failed to present these instances of alleged retaliation to the EEOC, the Court lacks subject matter jurisdiction over Mr. Elson's claim for retaliation, which is based solely on these acts. The Court does not understand Mr. Elson's current retaliation claim to assert the only act of retaliation he even arguably alleged (albeit speculatively) in his charge – his termination – and thus, Mr. Elson's retaliation claim is dismissed for lack of subject matter jurisdiction.

**IT IS THEREFORE ORDERED** that

(1)      Defendant Colorado Mental Health Institute at Pueblo's Motion for Summary Judgment (**#48**) is **GRANTED IN PART**, insofar as CMHIP is entitled to summary judgment on both Plaintiffs' claims of sex discrimination, and **DENIED IN PART** as moot, insofar as the Court lacks jurisdiction over Mr. Elson's retaliation claim. Mr. Elson's retaliation claim is **DISMISSED** for lack of subject matter jurisdiction.

(2)      The Clerk of the Court shall enter judgment in favor of the Defendant on the

18

claims in this matter and shall close this case.

Dated this 24th day of March, 2011

**BY THE COURT:**

Marcia S. Krieger
United States District Judge